## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

REGINALD VAN VALEN,                  :
                                     :    Civ. Action No. 18-11441(RMB)
          Plaintiff,                 :
                                     :
     v.                              :           **OPINION**
                                     :
COMMISSIONER GARY M. LANIGAN         :
*et al.*,                            :
                                     :
          Defendants.                :

**APPEARANCES:**

CONRAD J. BENEDETTO, Esq.
Law Offices of Conrad J. Benedetto
1223 Haddonfield-Berlin Road, Suite 1
Voorhees, NJ 08043
          On behalf of Plaintiff

MICHAEL EZRA VOMACKA, Assistant Attorney General
New Jersey Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market St.
P.O. Box 112
Trenton, NJ 08625
          On behalf of Defendant Commissioner Gary M. Lanigan

ANNMARIE SIMEON, Esq. and
MARGARET M. RAYMOND-FLOOD, Esq.
NORRIS, McLAUGHLIN & MARCUS, PA
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
          On behalf of Defendants University Correctional Health
          Care and University Behavioral Health Care

**BUMB**, United States District Judge

     This matter comes before the Court upon Defendant Lanigan's

Motion to Dismiss Plaintiff's Complaint ("Lanigan's Mot. to

Dismiss," ECF No. 10 and "Lanigan's Brief" ECF No. 10-2); Plaintiff's Opposition to Lanigan's Motion to Dismiss Plaintiff's Complaint ("Pl's Opp. To Lanigan's Mot. to Dismiss," ECF No. 15); Defendant Lanigan's Letter Brief in Further Support of his Motion to Dismiss Plaintiff's Complaint ("Lanigan's Reply," ECF No. 16); Defendants University Correctional Health Care ("UCHC") and University Behavioral Health Care's ("UCBC") (collectively, "the University Health Care Defendants") Motion to Dismiss Plaintiff's Complaint with Prejudice ("University Health Care Defs' Mot. to Dismiss", ECF No. 17); Plaintiff's Brief in Opposition to Defendants University Health Care and University Behavioral Health Care's Motion to Dismiss Plaintiff's Complaint ("Pl's Opp. to UCHC's Mot. to Dismiss," ECF No. 21); and Defendants UCHC and UBHC's Reply Brief ("University Health Care Defs' Reply Brief, ECF No. 23.) This Court will decide the motions on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b).

For the reasons discussed below, the Court will grant Lanigan's motion to dismiss and grant the University Health Care Defendants' motion to dismiss.

I.  BACKGROUND

In his Complaint, Plaintiff alleges that he was incarcerated at Bayside State Prison in Leesburg, New Jersey on August 13, 2016. (Compl., ECF No. 1, ¶23.) Upon his arrival at the prison, Plaintiff was provided with a wooden cane "through the Defendant UCHC and/or

UBHC." (Compl., ECF No. 1, ¶24.) Plaintiff was assigned to the general population with a cellmate named "Randals." (Id., ¶¶25-27.) Plaintiff was a documented member of the Crips and Randals was documented as affiliated with the Bloods, a rival gang. (Id., ¶¶26-27.)

On August 13, 2016, at approximately 7:00 a.m., Plaintiff was confined to his cell with Randals. (Id., ¶30.) Randals struck Plaintiff with his fist, and as the two fought, Randals knocked Plaintiff unconscious using his cane. (Id., ¶¶31-34.) The assault lasted for fifteen minutes within the cell and then continued in a common area after the cell doors were opened remotely. (Id., ¶¶32-41.)[1] As a result of the assault, Plaintiff underwent facial

---

[1] In Paragraphs 61 and 62, Plaintiff alleges that

> 61. [t]he actions undertaken by Defendants Cimino and Floyd, taken in concert with one another, were undertaken maliciously and sadistically for the purpose of causing harm. Such attack was an unnecessary, wanton infliction of harm for no good faith purpose.

> 62. Additionally, as the inmates were attacking, Defendants Cimono and Floyd left the Plaintiff alone to endure more assaults by several more inmates after the initial assault. Defendants intentionally failed to provide immediate medical care to Plaintiff when it was obviously needed.

Plaintiff did not name Cimino or Floyd as defendants in the caption of the Complaint or in the "Parties" section of the Complaint. Cimino and Floyd are not mentioned in any other part of the Complaint, so it is unknown what actions they took.

reconstructive surgery at Cooper University Health in Camden. (Compl., ECF No. 1, ¶¶43-44.) For the entire course of his six-day hospitalization, his hands and feet were shackled, depriving him of sleep and causing physical and mental discomfort. (<u>Id.</u>, ¶45.) The Corrections Officers who supervised Plaintiff during his hospitalization kept Plaintiff in shackles in defiance of Plaintiff's attending physician and nurses. (<u>Id.</u>, ¶46.)

## II. STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss, courts must accept the Plaintiff's allegations as true "with the important caveat that the presumption of truth attaches only to those allegations for which there is sufficient "factual matter" to render them "plausible on [their] face." <u>Schuchardt v. President of the United States</u>, 839 F.3d 336, 347 (3d Cir. 2016) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)). The plausibility determination is context-specific and requires a reviewing court to draw on its judicial experience and common sense. <u>Schuchardt</u>, 839 F.3d at 347 (citations omitted).

A plaintiff has the burden of pleading sufficient "factual matter" but need not plead "specific facts." <u>Id.</u> (quoting <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 215 (2d Cir. 2008) (quoting <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 569 (2007) and <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007)). "Implicit in the notion that a plaintiff need not plead 'specific facts' to survive a motion to dismiss is that

4

courts cannot inject evidentiary issues into the plausibility determination." Schuchardt, 839 F.3d at 347-38 (quoting Twombly, 550 U.S. at 556). A court may not dismiss a complaint based on the court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Id. at 348 (quoting Twombly, 550 U.S. at 556.)

In reviewing the sufficiency of a complaint, a court must first identify the legal elements required to state a cognizable claim. Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (citing Iqbal, 129 S.Ct. at 1950, Santiago v. Warminster Tp., 629 F.3d 121, 129-30 (3d Cir. 2010.) Second, the court should identify allegations that are no more than conclusions that are not entitled to an assumption of truth. Id.

At the second step of reviewing the sufficiency of a complaint, courts must identify allegations that are only legal conclusions and not entitled to the presumption of truth. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). Under Twombly and Iqbal, only legal conclusions are discounted, while "even outlandish allegations" are entitled to a presumption of truth unless they are merely "formulaic recitations of the elements of a … claim." Connelly, 809 F.3d at 789 (citing Iqbal, 556 U.S. at 681.) "[T]he clearest indication that an allegation is

conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." Id. at 790 (citing Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (citation and internal quotation marks omitted).

Third, a court must determine whether the "well-pleaded factual allegations plausibly give rise to an entitlement to relief." Argueta, 643 F.3d at 74 (citing Iqbal, 129 S.Ct. at 1950, Santiago, 629 F.3d at 129-30.) The plausibility requirement "'is not akin to a 'probability requirement.'" Id. (quoting Iqbal, 129 S.Ct. at 1949). The plausibility requirement requires a pleading to show "'more than a sheer possibility that a defendant has acted unlawfully.'" Connelly, 809 F.3d at 786 (quoting Iqbal, 556 U.S. at 678)). Allegations that are "merely consistent with a defendant's liability" … are not enough. Santiago, 629 F.3d at 133 (quoting Iqbal, 129 S.Ct. at 1949-50 (internal quotation marks omitted)). Where there is an allegation consistent with a defendant's liability but there is an "obvious alternative explanation," the inference of the defendant's liability is not plausible. Santiago, 629 F.3d at 133.

III. LANIGAN'S MOTION TO DISMISS

A.   The Parties' Arguments

Lanigan presents five arguments in support of his motion to dismiss the claims against him: (1) Plaintiff fails to state a supervisory liability claim under 42 U.S.C. § 1983 because he

failed to plead facts establishing the elements of a claim; (2) he is immune from Plaintiff's state law claims under the New Jersey Tort Claims Act ("NJTCA") for his discretionary acts, citing N.J.S.A. § 59:3-2(a)); (3) the NJTCA bars liability of a public entity and public employee for injuries inflicted on one prisoner by another prisoner, citing N.J.S.A. § 59:5-2); (4) Plaintiff failed to comply with the NJTCA's presentation requirements § 59:8-8; and (5) Lanigan is entitled to qualified immunity on Plaintiff's § 1983 claim. (Lanigan's Brief, ECF No. 10-2 at 13-21.) Lanigan requests a stay of discovery pending decision on the qualified immunity issue. (Id. at 22.)

In opposition to the motion to dismiss, Plaintiff states that he brought this action for violation of the Eighth Amendment, the Due Process Clause, 42 U.S.C. § 1983, and statutory and common laws of the State of New Jersey. (Pl's Opp. To Lanigan's Mot. to Dismiss, ECF No. 15 at 4.) In support of Lanigan's supervisory liability under § 1983, Plaintiff argues that "the Court should accept that the Defendants were aware of the Plaintiff's and Randals' gang affiliation. Yet, despite this knowledge place[d] them in the same cell." (Pl's Opp. To Lanigan's Mot. to Dismiss, ECF No. 15 at 8.) Further, Plaintiff asserts

> it can be inferred that it was the pattern, practice, policy or custom of the Defendants in placing rival gang member [sic] in the same cell, which resulting in [sic] the Plaintiff sustaining injuries in violation of his

>           constitutional rights and his rights under the
>           New Jersey Civil Rights Act.

(Pl's Opp. To Lanigan's Mot. to Dismiss, ECF No. 15 at 8.)

Plaintiff also contends that he sufficiently pled a negligence claim against Lanigan by pleading that "Defendants" caused members of two rival gangs to be placed in the same cell, and it was foreseeable that this would result in Plaintiff's injury. (Id.) It was also foreseeable that providing Plaintiff with a wooden cane and not placing him in a segregated infirmary unit would result in Plaintiff's injury by a rival gang member. (Id.)

Plaintiff submits that Lanigan is not immune for his discretionary acts under N.J.S.A. § 59:3-2(a) because "it can be inferred that the allegations laid out in Plaintiff's Complaint rise to the level of actual malice or willful misconduct[,]" which are not subject to immunity. (Id. at 9, citing N.J.S.A. § 59:3-14.) Plaintiff also maintains that Lanigan is not shielded from liability under N.J.S.A. § 59:5-2 for an injury caused by another inmate because his actions rise to the level of malice. (Pl's Opp. To Lanigan's Mot. to Dismiss, ECF No. 15 at 9, citing Bona v. Wynn, 311 N.J. Super 257 (1997)).

With respect to Plaintiff's alleged failure to comply with the presentation requirements of the NJTCA under N.J.S.A. § 59:9-2, Plaintiff asserts Lanigan has not affirmatively proven that

Plaintiff has not complied with the presentation requirements and, in any event, "due to the nature and documentation of the Plaintiff's injuries, a court could find that Plaintiff has substantially complied with the notice requirements of N.J.S.A. 59:8-8…." (Pl's Opp. To Lanigan's Mot. to Dismiss, ECF No. 15 at 9.) Finally, Plaintiff contends that Lanigan is not entitled to qualified immunity because "Plaintiff has clearly presented facts that support his state and constitutional claims." (Id. at 10.)

In reply, Lanigan argues that Plaintiff's § 1983 and NJCRA claims fail because Plaintiff did not allege facts indicating that (1) Lanigan knew Plaintiff was issued a cane; (2) Lanigan was aware of Plaintiff's gang membership; (3) Lanigan was involved with Plaintiff's housing; (4) Lanigan was aware of Randals' gang affiliation; and (5) Lanigan had contemporaneous knowledge of Plaintiff's housing assignment, his fight with Randals, and of medical care provided to Plaintiff. (Lanigan's Reply, ECF No. 16 at 2-4.)

Lanigan also argues that the Complaint does not allege any common law claims against him, and the only intentional torts referred to in the Complaint are alleged against correctional officers. (Id. at 4-5.) Even if the Court were to construe a common law claim against him, Lanigan submits that Plaintiff failed to allege he met the presentation requirements of the NJTCA by submitting a timely notice of claim, and Plaintiff's opposition

brief does not establish substantial compliance with the NJTCA. (Lanigan's Reply, ECF No. 16 at 5-7.) Lanigan also challenges Plaintiff's assertion that the allegations against him rise to the level of actual malice or willful misconduct. (Id. at 7-8.)

B.  Analysis

As a threshold matter, the parties dispute the nature of the legal claims raised against Lanigan. The Court looks to the specific counts[2] in the Complaint for clarification of the legal claims against the various defendants. Count I alleges violations of the Eighth Amendment and Due Process Clause [presumably the Fourteenth Amendment] of the United States Constitution, with jurisdiction under 42 U.S.C. § 1983. (Compl., ECF No. 1, ¶¶50-56.) Counts II and III are alleged solely against "Defendant Corrections Officers." (Id., ¶¶57-67.) Count IV is alleged against Lanigan and Administrator Powell for violations of the Eighth Amendment and [Fourteenth Amendment] Due Process Clause of the United States Constitution. (Id., ¶¶76-84.) Count V is alleged solely against "Defendant Corrections Officers" for intentional torts of assault and battery and Count VI is solely against Defendant Corrections Officers for intentional infliction of emotional distress. (Compl., ECF No. 1, ¶¶85-88, 89-92.) Count VII is against all

_____

[2] The counts of the Complaint are mislabeled as Count II, Count II, Count III, Count II, Count V, Count VII, and Count VIII. There are seven counts, which the Court will refer to as Counts I through VII.

defendants for violations of the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2 *et seq.* for violating the Eighth Amendment to the United States Constitution by failing to prevent the inmate attack on Plaintiff. (<u>Id.</u>, ¶¶93-100.) Plaintiff asserts pendent jurisdiction over his state common law and NJCRA claims under 28 U.S.C. § 1367. (<u>Id.</u>, ¶8.)

1.    Counts V and VI: State Tort Law Claims

Although Plaintiff generally alleged negligence in the Introductory Statement section of the Complaint (Compl., ¶3), he did not include a count of negligence against specific defendants. Plaintiff is represented by counsel, and, thus, he is not entitled to liberal construction of the Complaint. If Plaintiff wishes to plead negligence, he should seek to amend his Complaint. Counts V and VI are intentional tort claims against John Doe Corrections Officers. Because Plaintiff has not pled a tort claim against Lanigan, the Court need not address whether Plaintiff met the presentation requirements of the NJTCA or Lanigan's contention that he is immune from Plaintiff's tort claims.

2.    Counts I and IV: violation of the Due Process Clause [Fourteenth Amendment] under 42 U.S.C. § 1983

The first step of the Rule 12(b)(6) analysis is to identify the elements required to state a cognizable claim. Plaintiff has not defined the contours of his Due Process Claim. In Count I, Plaintiff alleges that Lanigan's failure to protect him from attack

by another inmate from a rival gang violates both the Eighth Amendment and the substantive due process protections of the Due Process Clause. Plaintiff alleges in Count IV that Lanigan is liable, as a policymaker, for Defendant John Doe Corrections Officers' conduct of keeping Plaintiff's hands and legs shackles for his entire six-day hospitalization in August 2016.

'"[T]he 'more-specific-provision-rule' … 'holds that 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Wharton v. Danberg, 854 F.3d 234, 246 (3d Cir. 2017) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7, (1997)). The detention of sentenced inmates is governed by the Eighth Amendment, and the detention of pretrial detainees is governed by the Due Process Clause of the Fourteenth Amendment. Wharton, 854 F.3d at 247 (citing Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979)).

Plaintiff alleged that,

> [t]his is a civil rights action brought pursuant to 42 U.S.C[.] § 1983 seeking damages against Defendants for committing acts under color of law that deprived Plaintiff, while incarcerated at Bayside State Prison, of his rights secured by the constitution and laws of the United States of America.

(Compl., ECF No. 1, ¶1.) The allegations arise out of an assault on Plaintiff that occurred on August 13, 2016 and his subsequent

hospitalization. (Id., ¶¶2, 69-75.) Nowhere in the Complaint does Plaintiff state whether he was a pretrial detainee or a sentenced prisoner at any time relevant to the allegations. State prisons, however, generally house only inmates sentenced to prison terms of one year or longer. See N.J.S.A. § 2C:43-10.

Given the general rule that only sentenced inmates are confined in New Jersey state prisons, the Court construes the Complaint as alleging Plaintiff was a sentenced inmate incarcerated at Bayside State Prison at all relevant times in the Complaint. See Fed. R. Evid. 201(b)(2) (a "court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") Under the more-specific-provision rule, Plaintiff's claims arise under the more specific provision of the Eighth Amendment's ban on cruel and unusual punishment and not as a more general right to substantive due process. The Court will dismiss the Due Process Claims without prejudice. If Plaintiff was a pretrial detainee at any relevant time, he may amend the Complaint to allege a Due Process claim.

> 3. Counts I and IV: violation of the Eighth Amendment under 42 U.S.C. § 1983 for failure to protect

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects … any citizen of the United States … to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

The gravamen of the Complaint is that Plaintiff was assigned a cellmate affiliated with a rival gang, who assaulted Plaintiff using the wooden cane that Plaintiff was provided by prison healthcare providers. The elements of an Eighth Amendment failure to protect claim are (1) that the plaintiff is "'incarcerated under conditions posing a substantial risk of serious harm'"; and (2) prisons officials acted "'with deliberate indifference to [the plaintiff's] health or safety.'" Reed v. Harpster, 506 F. App'x 109, 111-12 (3d Cir. 2012) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "Deliberate indifference may be proven by showing that 'the official knows of and disregards an excessive risk to inmate health or safety.'" Id. at 112 (quoting Farmer, 511 U.S. at 837)). To meet the deliberate indifference standard, "[n]ot only must a prison official be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but the official 'must also draw the inference.'" Reed, 506 F. App'x at 112 (quoting Farmer, 511 U.S. at 837)).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*[,]" the liability of an employer for the acts of an employee. Iqbal, 556 U.S. at 676. "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead

14

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue." Id. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 677.

In Barkes, the Third Circuit has identified two instances where a supervisory defendant may be liable for unconstitutional acts undertaken by subordinates. Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316-19 (3d Cir. 2017), rev'd on other grounds, Taylor v. Barkes, 135 S.Ct. 2042 (2015). The first basis for liability of a supervisory defendant is where the supervisor personally joined the subordinate in violating a plaintiff's rights, directed others to violate the plaintiff's rights or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. Barkes, 766 F.3d at 316.

The second instance where a supervisory defendant may be liable for unconstitutional acts undertaken by subordinates is where a supervisor ""with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." Barkes, 766 F.3d at 316 (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (alteration

in original) (quoting <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882
F.2d 720, 725 (3d Cir. 1989)). Failure to train and failure to
supervise claims are a subcategory of policy or practice liability.
<u>Id.</u>

To hold a supervisor liable based on a policy or practice
that led to an Eighth Amendment violation,

> the plaintiff must identify a specific policy
> or practice that the supervisor failed to
> employ and show that: (1) the existing policy
> or practice created an unreasonable risk of
> the Eighth Amendment injury; (2) the
> supervisor was aware that the unreasonable
> risk was created; (3) the supervisor was
> indifferent to that risk; and (4) the injury
> resulted from the policy or practice.

<u>Beers-Capitol [v. Whetzel]</u>, 256 F.3d 120, 134 (3d Cir. 2001)
(quoting <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)).
"[P]erhaps the easiest way [] a plaintiff can make out a supervisor
liability claim is by showing that 'the supervisory official failed
to respond appropriately in the face of an awareness of a pattern
of such injuries.'" <u>Beers-Capitol</u>, 256 F.3d at 134 (quoting <u>Sample</u>,
885 F.2d at 1118)). There are, however, "'situations in which the
risk of constitutionally cognizable harm is so great and so obvious
that the risk and the failure of supervisory officials to respond
will alone support findings of the existence of an unreasonable
risk, of knowledge of that unreasonable risk, and of indifference
to it.'" <u>Beers-Capitol</u>, 256 F.3d at 134 (quoting <u>Sample</u>, 885 F.2d
at 1118.)

Failure to train, discipline, and supervise are assessed under the same deliberate indifference standard as the failure to promulgate adequate policies. Christopher v. Nestlerode, 240 F. App'x 481, 489 n. 6 (3d Cir. 2007). To establish deliberate indifference for failure to train, a plaintiff must show that policymakers were on actual or constructive notice that flaws in their training or supervision caused subordinate officials to violate citizens' constitutional rights, and such notice generally requires contemporaneous knowledge of an incident or knowledge of a prior pattern of similar incidents and circumstances. Connick v. Thompson, 563 U.S. 51, 61 (2011).

"But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989). Under those circumstances "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." City of Canton, Ohio, 489 U.S. at 390. An example of a policy that meets this standard would be the failure of a municipality to train police officers to use the firearms they are required to carry. Id. at 390 n. 10.

Having defined a legally cognizable claim, the second step of the Rule 12(b)(6) analysis is to identify allegations that are only legal conclusions and not entitled to the presumption of truth. The following allegations in the Complaint, in whole or in part, contain legal conclusions merely stating the elements of a failure to protect claim against Lanigan: ¶¶2, 19, 20, 54, 55, 56, 77, 78, 80, 81, 83.[3]

The final step of the Rule 12(b)(6) analysis requires courts to determine whether the well-pleaded factual allegations plausibly give rise to an entitlement to relief. The following are well-pleaded factual allegations pertaining to the failure to protect claim against Lanigan. At all relevant times, Lanigan was the acting Commissioner of the New Jersey Department of Corrections. (Compl., ECF No. 1, ¶11.) Lanigan was a decision-maker who possessed final authority to establish Department of Corrections policy and custom with respect to the operations of

---

[3] Plaintiff's use of these and similar phrases throughout the Complaint are not entitled to a presumption of truth under Rule 12(b)(6): the defendants "knew," "purposefully caused," "were part of a pattern of conduct in violation of citizen's rights," "engaged in a pattern," "acted with deliberate indifference," "grossly negligent," "reckless," "as a direct and proximate result," "intentional misconduct," "intentional and willful acts," "willfully and maliciously," "grossly excessive use of force," "excessive force," "unnecessary wanton infliction of harm for no good faith purpose," "undertaken sadistically and maliciously for the purpose of causing harm," "failures were the cause and moving force."

Bayside State Prison. (<u>Id.</u>, ¶12.) Defendant John Doe Corrections Officers acted under the supervision of Lanigan. (<u>Id.</u>, ¶17.)

Plaintiff was a documented member of the Crips gang. (<u>Id.</u>, ¶26.) "Defendants" housed Plaintiff with a cellmate, Randals, who had documented affiliations with the Crips' rival gang, the Bloods. (<u>Id.</u>, ¶27.) On August 13, 2016, Randals and Plaintiff were confined in their locked cell in Bayside State Prison when Randals, "acting to further his gang status," initiated a fight with Plaintiff by punching him. (<u>Id.</u>, ¶31.) They fought without intervention for fifteen minutes, at which time Randals grabbed Plaintiff's cane and hit Plaintiff in the face with it, causing Plaintiff to lose consciousness. (<u>Id.</u>, ¶¶32, 33.)

As Plaintiff regained consciousness, Randals broke the cane across his knee and continued to hit Plaintiff in the head and face. (<u>Id.</u>, ¶34.) The assault on Plaintiff continued outside the cell after the cell doors were opened remotely. (<u>Id.</u>, ¶¶35-36.) As Plaintiff tried to reach the officer's station for help, another inmate grabbed Plaintiff and assaulted him. (<u>Id.</u>, ¶37.) "Randals then began shouting to rile up the other Bloods affiliated inmates of C-Wing." (<u>Id.</u>, ¶38.) Plaintiff escaped further assault by crawling back to his cell, while Randals was "running about C-Wing." (Compl., ECF No. 1, ¶¶37-39.) Defendant Corrections Officers never intervened in the assault. (<u>Id.</u>, ¶40.)

As a result of the attack, Plaintiff suffered bruises, contusions, fractures, blurred vision and other sight deficiencies. (Id., ¶53.) Plaintiff was hospitalized from August 13 through August 19, 2016, when he underwent facial reconstructive surgery. (Id., ¶¶42-44.) Defendant Lanigan developed policies or customs for Bayside State Prison. (Id., ¶¶77, 78.)

Plaintiff alleges that Lanigan (1) knew of and acquiesced in unconstitutional conduct of the Defendant Corrections Officers (Id., at ¶79(e)); (2) failed to properly train and supervise Defendant Corrections Officers in preventing and suppressing inmate violence (Id., at ¶¶79(a), (b)); (3) failed to maintain a policy or custom that provided a safe prison environment (id., ¶79(f)); and (4) failed to prevent, stop, and discipline inmates who used excessive force against other inmates (id., ¶80.))

To begin, Plaintiff has not pled any facts supporting his conclusion that the John Doe Corrections Officers who made Plaintiff's housing assignment knew that Plaintiff was a member of the Crips and that Randals was affiliated with the Bloods. Although Plaintiff alleges that his and Randals' gang affiliations were "documented," Plaintiff does not allege their gang affiliations were documented in his prison file or any other location where the John Doe Corrections Officers would see it or become aware of it. Given the vagueness of the allegations, the Court cannot reasonably draw an inference that the John Doe Corrections Officers had

knowledge of their rival gang affiliations, let alone that Lanigan, as their supervisor, had contemporaneous knowledge of and acquiesced in the housing assignment. Thus, Plaintiff has not alleged facts indicating that Lanigan knew of and acquiesced in failing to protect Plaintiff from a substantial risk to his safety, in violation of Plaintiff's rights under the Eighth Amendment.

For liability of a supervisory defendant, "[a] claimant "must identify a custom or policy, and specify what exactly that custom or policy was" that caused the constitutional injury.) McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). In other words, "the [plaintiff] must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." Chavarriaga v. New Jersey Dept. of Corr., 806 F.3d 210, 227 (3d Cir. 2015). Plaintiff alleges the omission of a policy to maintain a safe prison environment. Lack of such a policy is not specific enough to demonstrate Lanigan's deliberate indifference that Randals would assault Plaintiff and injure him. Further, Plaintiff's allegation that inmate attacks on rival gang members was a "custom" is unsupported by any allegation of similar attacks. See Baker v. Monroe Tp., 50 F.3d 1186, 1194 (3d Cir. 1995) (the plaintiffs' accounts "of what happened in this particular case do not establish a custom or usage[.]")

As described above, a failure to train or supervise is a subcategory of a policy or practice liability. "For a [supervisor's] alleged failure to train to amount to a deliberate choice, the plaintiff must show '(1) [the supervisor knew] that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Logan v. Board of Education of School District of Pittsburgh, 742 F. App'x 628, 632 (3d Cir. 2018) (quoting Doe v. Luzerne County, 660 F.3d 169, 179 (3d Cir. 2011) (quoting Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)). Such a claim is difficult to prove. See Bd of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 406 (1997) (failure to train claims present difficult problems of proof because deliberate indifference is required for liability).

A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred. Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing Colburn v. Upper Darby Township, 946 F.2d 1017, 1030 (3d Cir. 1991)). Plaintiff has not identified a specific deficiency in training or supervision that caused a prison employee to assign

Plaintiff to a cell with a rival gang member. Instead, Plaintiff invites the Court to infer there was such a deficiency simply because the incident occurred. See Reitz, 125 F.3d at 145 ("[w]hen a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee.") Plaintiff has not stated a cognizable claim under the Eighth Amendment for liability of a supervisory defendant based on failure to train or supervise. See Doe v. Luzerne County, 660 F.3d at 180 (for § 1983 liability "'the identified deficiency in a [] training program must be closely related to the ultimate injury," City of Canton, Ohio, 489 U.S. at 391 "meaning that the plaintiff must 'prove that the deficiency in training actually caused [the constitutional violation at issue].'" Id.) The Court will dismiss Plaintiff's Eighth Amendment failure to protect claim against Lanigan without prejudice. See Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (plaintiff should receive leave to amend the complaint within a set period of time unless amendment would be futile or inequitable).

      4.    Counts I and IV: violation of the Eighth Amendment under 42 U.S.C. § 1983 for being shackled while hospitalized for six days

Plaintiff also seeks to hold Lanigan liable for the conduct of the Corrections Officers who kept Plaintiff shackled while hospitalized from August 13-19, 2016 for treatment of his head and face injuries. In addressing Lanigan's motion to dismiss this claim, the Court must identify the elements of a legally cognizable claim.

A "prison condition" may violate the Eighth Amendment where the defendants acted with deliberate indifference to Plaintiff's health or safety by subjecting a prisoner to unnecessary and wanton infliction of pain that is "'totally without penological justification.'" Hope v. Pelzer, 536 U.S. 730, 737 (2002) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). If the risk of harm is obvious, a court should infer the existence of the subjective state of mind. Hope, 56 U.S. at 738. Facts suggesting Lanigan's deliberate indifference must also be pled to hold Lanigan liable for the acts of the Corrections Officers who shackled Plaintiff during his hospitalization.

The Court will not apply the presumption of truth to the following allegations, in whole and/or in part, because they are conclusory: Paragraphs 2, 19, 47, 48, 69, 70, 71, 73, 74, 75, 77, 79, 80, 81, 83, 84.[4]

---

[4] See supra n. 2.

The well-pled factual allegations for an Eighth Amendment
violation based on a condition of confinement are that Lanigan was
the acting Commissioner of the New Jersey Department of Corrections
who possessed final authority to establish Department of
Corrections policy and custom in operating Bayside State Prison.
(Compl., ECF No. 1, ¶¶11, 12.) Defendant John Doe Corrections
Officers acted under Lanigan's supervision. (Id., ¶17.) During his
hospitalization in August 2016, Plaintiff's hands and feet were
shackled, depriving him of sleep and causing him physical and
mental discomfort. (Id., ¶45.) The Defendant Corrections Officers
who supervised Plaintiff during his hospitalization insisted that
Plaintiff's hands and feet remain shackled during his six-day
hospitalization, in defiance of Plaintiff's attending physician
and nurses, who insisted that the shackles be removed. (Id., ¶46.)

Plaintiff alleges Lanigan "failed to properly train the
Defendant Corrections Officers with regard to performing their
duties in an outside hospital setting without subjecting inmates
to an extreme deprivation of a condition of confinement." (Id.,
¶79(c)). He further alleges that Lanigan "failed to properly
supervise the Defendant Corrections Officers with regard to
performing their duties in an outside hospital setting without
subjecting inmates to an extreme deprivation of a condition of
confinement." (Compl., ECF No. 1, ¶79(d)).

Plaintiff's allegations of Lanigan's failure to train and supervise are too vague to state a cognizable claim. The phrase "extreme deprivation of a condition of confinement" is a legal conclusion. The condition that Plaintiff is referring to is the decision to keep him in hand and leg shackles while hospitalized. Plaintiff alleges that having his hands and legs cuffed for six days while recovering from facial reconstructive surgery deprived him of sleep and caused him physical and mental discomfort. Plaintiff, however, does not allege that there was no penological justification for keeping him shackled while he was outside the confines of prison. Further, Plaintiff does not allege how wearing the shackles posed an excessive risk to his health. See Beers-Capitol, 256 F.3d at 131 ("'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety'") (quoting Farmer, 511 U.S. at 837.))

Plaintiff has not identified a specific training program or supervisory action that would have caused the Defendant Corrections Officers to remove Plaintiff's shackles during his hospitalization "while performing their duties in an outside hospital setting." (Compl., ECF No. 1, ¶¶79(c), (d)). The Defendant Corrections Officers' duties "in an outside hospital setting" obviously included preventing Plaintiff's escape and preventing

him from harming others. Plaintiff has not pled how the Corrections Officers should have been trained or supervised differently to perform their duties without keeping Plaintiff in hand and leg cuffs.

Plaintiff alternatively pled that while the policy or procedure may have been proper, it was "violated with such frequency and reckless abandon that the Corrections Officer Defendants did not fear discipline and directly resulted in the deprivations of the constitutional rights of the Plaintiff described herein." (Id., ¶48.) "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a [supervisor] to liability on the theory that the relevant practice is so widespread as to have the force of law." Bryan Cty, 520 U.S. at 404 (quoting Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 690–691 (1978) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–168 (1970)). Plaintiff, however, did not plead any other instances where Corrections Officers used hand and leg cuffs on a prisoner while hospitalized, against the insistence of the prisoner's physician and nurses.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bryan Cty., 520 U.S. at 409.) "The Supreme Court

sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a [supervisor] could be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 63. The hypothetical example given by the Supreme Court was "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." Id. "Given the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." Id. at 63-64 (quoting Bryan Cty, 520 U.S. at 409).

In this case, there is not a "known frequency" in which Corrections Officers use hand and leg cuffs on a hospitalized prisoner over the objections of the prisoner's physician and nurses. Therefore, this is not the type of rare circumstance in which the consequences of failure to train makes a constitutional violation patently obvious.

For the reasons discussed above, Plaintiff has failed to state any cognizable § 1983 claim against Lanigan. The Court need not address Lanigan's qualified immunity defense. The Court will grant Lanigan's motion to dismiss and permit Plaintiff to file an amended claim against Lanigan within 30 days, if Plaintiff can allege additional facts that support a cognizable claim.

IV.  UNIVERSITY HEALTH CARE DEFENDANTS' MOTION TO DISMISS

A.  The Parties' Arguments

The University Health Care Defendants seek dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for relief and because the claims are barred by the applicable statute of limitations. (Brief in Supp. of Mot. to Dismiss the Compl. on Behalf of Defendants University Correctional Health Care and University Behavioral Health Care, Pursuant to Fed.R.Civ.P. 12(b)(6) and Applicable Statute of Limitations ("University Health Care Defs' Brief," ECF No. 17-1 at 5.) As to their first point, they assert the only allegations against them in the Complaint are found in paragraphs 24, 25 and 28:

> 24. Upon his arrival to Bayside State Prison in 2012, the Plaintiff, suffering from a permanent disability, was provided with a wooden cane through the Defendant UCHC and/or UBHC and Defendant Healthcare Providers.
>
> 25. Despite issuance of the said cane, which posed obvious risks to institutional security, neither the Prison Defendants nor Defendant

UCHC and/or UBHC assigned the Plaintiff to a segregated infirmary unit. Instead, the Plaintiff was assigned to general population and the C-Wing unit of Bayside State Prison.

28. The Plaintiff's and Randals' rival gang affiliations presented a substantial risk of harm to both inmates' safety, one which was further exacerbated by the Prison Defendant's failure to segregate the Plaintiff based on the wooden cane he was provided by Defendant UCHC and/or UBHC and/or Defendant Healthcare Providers.

(University Health Care Defs' Brief, ECF No. 17-1 at 5.)

Plaintiff alleges the University Health Care Defendants were deliberately indifferent to the safety risk posed by providing Plaintiff with a cane and not assigning him to housing in a medical unit with added security. (Id. at 9.) The University Health Care Defendants note that Plaintiff did not allege they played any role in the security measures at the correctional facility or in the residential assignments of inmates in the facility. (Id.) They maintain that Plaintiff admits their role was to provide medical care and it was the "Prison Defendants" that failed to segregate Plaintiff. (University Health Care Defs' Brief, ECF No. 17-1 at 9, citing Compl., ¶¶15, 16, 28.) Therefore, they conclude Plaintiff fails to state a plausible claim under the Eighth Amendment for failure to protect because Plaintiff does not, and indeed could not plausibly allege that they had any responsibility for correctional facility security measures or the placement of

inmates in a particular residential unit. (University Health Care Defs' Brief, ECF No. 17-1 at 9-10.)

The University Health Care Defendants also argue that the Complaint should be dismissed because the § 1983 and NJCRA claims are barred by the statute of limitations. (Id. at 12.) The statute of limitations in New Jersey for § 1983 and NJCRA claims is two years. (Id. at 12-13.) Plaintiff knew or should have known of his exposure to a safety risk in 2012. (Id., at 13.) Plaintiff did not file his complaint until July 2018, approximately six years after his claims accrued. (Id.) Therefore, the University Health Care Defendants contend Plaintiff's claims against them should be dismissed as barred by the statute of limitations. (Id.)

Plaintiff opposes the motion to dismiss. He alleges that UCHC and UBHC were involved in the decision to provide Plaintiff with a wooden cane, an object that foreseeably could have been used as a weapon in prison. (Pl's Opp. to University Health Care's Mot. to Dismiss, ECF No. 21 at 9.) "Plaintiff asserts that he should not have been provided with said cane instead of being placed in a segregated infirmary unit; and seeks to uncover, through discovery, why he was provided with said cane instead of being placed in a segregated infirmary unit." (Id.) Plaintiff contends his allegations meet the notice requirement for pleading under Federal Rule of Civil Procedure 8(a). (Pl's Opp. to University Health Care's Mot. to Dismiss, ECF No. 21 at 9.)

Plaintiff also submits that his claims are not barred by the statute of limitations. He explains that he was "incarcerated at the time that he was assaulted and sustained injuries at the hands of 'Randals'" and "this action was initiated as soon as he became aware that the injuries he sustained were actionable and the persons responsible were ascertainable and identifiable. . ." (Id. at 10.)

B. <u>Analysis</u>

1. Count IV: violation of the Eighth Amendment under 42 U.S.C. § 1983 for failure to protect

Plaintiff alleges the following pertinent facts, ignoring legal conclusions. Defendant UCHC and UBHC are state-run health systems that provide medical, dental and psychiatric services for inmates under the custody of the New Jersey Department of Corrections at Bayside State Prison. (Compl., ECF No. 1, ¶¶15, 16.) Defendant John Doe Health Care Providers 1-20 were employed by UCHC or UCBC and acted under the supervision of Lanigan. (Id., ¶18.) The actions of the Defendant Health Care Providers were pursuant to official policy or custom of UCHC and/or UBHC. (Id., ¶19.)

Upon his arrival at Bayside State Prison in 2012, Plaintiff was provided a wooden cane through UCHC, UBHC and Defendant John Doe Health Care Providers. (Compl., ECF No. 1, ¶24.) Neither UCHC nor UBHC assigned Plaintiff to a segregated infirmary unit. (Id.,

¶25.) Instead, Plaintiff was assigned to C-Wing in the general population. (Id., ¶26.) Defendant UCHC and/or UBHC and Defendant Health Care Providers prescribed Plaintiff a wooden cane without ensuring that he would be housed in a medical unit with added security. (Id., ¶51.)

On August 13, 2016, Plaintiff's cellmate, who had documented affiliations with a rival gang, assaulted Plaintiff with his wooden cane, causing physical injuries to Plaintiff's head and face. (Id., ¶¶30-34.) About twenty minutes after the assault, UCHC and/or UBHC and/or Defendant Health Care Providers transported Plaintiff to Inspira Medical Center for medical treatment. (Id., ¶¶41-42.)

Plaintiff's claim against the University Health Care Defendants appears to be based on failure to protect him from assault by another inmate using Plaintiff's cane against him. It is the duty of the prison healthcare providers to provide for an inmate's medical needs, not his safety from other inmates. See Guilliams v. Helder, Civ. No. 5:16-cv-05170, 2018 WL 709966 at *17 (W.D. Ark. Feb. 5, 2018) (prisoner stated § 1983 claim against medical defendants for refusing to prescribe splints, braces or casts based on their interpretation of County Defendants' policy as a total ban on use of such devices for safety reasons). The Complaint does not create a plausible inference that UCHC and UBHC, as the contracted medical providers for Bayside State Prison, were responsible for protecting Plaintiff's safety from assault by

33

other inmates after prescribing a medical device that could be used as a weapon. Therefore, Plaintiff fails to state an Eighth claim of failure to protect against the University Health Care Defendants.

    2.    Count IV: violation of the Eighth Amendment under 42 U.S.C. § 1983 for failure to provide adequate medical care

Plaintiff's opposition brief to the University Health Care Defendants' motion to dismiss suggests that Plaintiff's Eighth Amendment claim is best understood as a medical claim for failure to assign him to "a segregated infirmary unit." (Pl's Opp. to University Health Care's Mot. to Dismiss, ECF No. 21 at 9.) "The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)). To state a cognizable claim, a plaintiff must allege facts (1) "subjectively showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson, 850 F.3d at 534 (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). "[F]inding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official "knows of and disregards an excessive risk to inmate health or safety."

Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Farmer, 511 U.S. at 837). This requires that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... [that he drew] the inference." Id.

Here, Plaintiff has not alleged what medical condition he suffers, making it impossible to determine whether he had a serious medical need that required treatment in a segregated infirmary unit in the prison. Even assuming that Plaintiff's permanent disability constitutes a serious medical need, Plaintiff has not alleged how the failure to assign him to a segregated infirmary constituted deliberate indifference to his *medical* needs. In other words, Plaintiff does not allege that there is any medical treatment he required that had to be provided in a segregated infirmary unit in the alternative to providing Plaintiff with a cane. The Court will grant the University Health Care Defendants' motion to dismiss Plaintiff's § 1983 claims. Plaintiff will be permitted to file an amended complaint if he can plead additional facts to state a cognizable claim.

> 3.  Count VII: Violations of the New Jersey Civil Rights Act, NJSA 10:6-2 *et seq.*

Count VII is against all defendants for violations of the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2 *et seq.* for violating the Eighth Amendment to the United States Constitution by failing to prevent the inmate attack on Plaintiff. (Compl., ECF No. 1, ¶¶93-100.)

The NJCRA provides, in relevant part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State ... may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2. "The NJCRA is interpreted as analogous to § 1983." Szemple v. Corr. Med. Servs., Inc., 493 F. App'x 238, 241 (3d Cir. 2012) (citations omitted). New Jersey Constitution Article I, Paragraph 12 bans the infliction of cruel and unusual punishment and is interpreted analogously to the Eighth Amendment. Id. Further, "[t]he elements of a substantive due process claim under the [NJ]CRA are the same as those under § 1983." Filgueiras v. Newark Pub. Sch., 45 A.3d 986, 997 (N.J. Super. Ct. App. Div. 2012) (quoting Rezem Family Assocs., LP v. Borough of Millstone, 30 A.3d 1061 (N.J. Super. Ct. App. Div.); see also Trafton v. City of Woodbury, 799 F.Supp.2d 417, 443 (D.N.J. 2011) (noting the federal district court in New Jersey "has repeatedly interpreted [the NJCRA] analogously to § 1983")).

Plaintiff has failed to state a cognizable Eighth Amendment or Fourteenth Amendment claim against Lanigan or the University Health Care Defendants. Therefore, he has also failed to state a claim under the NJCRA. The Court will dismiss Count VII of the Complaint without prejudice.

V.   CONCLUSION

For the reasons discussed above, Defendant Lanigan's motion to dismiss is granted, and the § 1983 and NJCRA claims against Lanigan are dismissed without prejudice for failure to state a claim. The University Health Care Defendants' motion to dismiss is granted, and Plaintiff's § 1983 and NJCRA claims against the University Health Care Defendants are also dismissed without prejudice for failure to state a claim.


An appropriate Order follows.

DATE:  March 25, 2019

<div style="margin-left:40%">

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

</div>