**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| REGINALD VAN VALEN, : | |
| : | Civ. Action No. 18-11441(RMB) |
| Plaintiff, : | |
| : | |
| v. : | **OPINION** |
| : | |
| COMMISSIONER GARY M. LANIGAN : | |
| *et al.*, : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

CONRAD J. BENEDETTO, Esq.
Law Offices of Conrad J. Benedetto
10,000 Lincoln Drive East-Suite 201
Marlton, NJ 08053
    On behalf of Plaintiff

MICHAEL EZRA VOMACKA, Deputy Attorney General
New Jersey Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market St.
P.O. Box 112
Trenton, NJ 08625
    On behalf of Defendant Commissioner Gary M. Lanigan

MARGARET M. RAYMOND-FLOOD, Esq.
NORRIS McLAUGHLIN PA
400 Crossing Boulevard, 8th Floor
Bridgewater, NJ 08807
    On behalf of Defendants University Correctional Health
    Care and University Behavioral Health Care

**BUMB**, United States District Judge

    This matter comes before the Court upon Plaintiff's motion to reinstate and amend his complaint ("Mot. to Amend," ECF No. 26);

Defendants University Behavioral Health Care and University Correctional Health Care's brief in opposition to Plaintiff's motion to amend ("Defs. UBHC and UCHC's Opp. Brief," ECF No. 30); and Defendant Lanigan's brief in opposition to Plaintiff's motion to amend ("Lanigan's Opp. Brief," ECF No. 31). This Court will decide the motions on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure 78(b).

For the reasons discussed below, the Court will deny Plaintiff's motion to reinstate and amend the complaint.

I. BACKGROUND

On July 6, 2018, Plaintiff filed his complaint in this Court. (Compl., ECF No. 1). Defendants Lanigan, UBHC and UCHC filed motions to dismiss the complaint. (Motions to Dismiss, ECF Nos. 10, 17.) On March 25, 2019, the Court entered an Opinion and Order granting the defendants' motions to dismiss, dismissing the claims against the defendants without prejudice, and giving Plaintiff 30 days to file an amended complaint. (Opinion, ECF No. 24; Order, 25). Plaintiff filed his motion to reinstate and amend the complaint on July 13, 2019. (Mot. to Amend, ECF No. 26.)

In his original complaint, Plaintiff alleged that he was incarcerated at Bayside State Prison in Leesburg, New Jersey on August 13, 2016. (Compl., ECF No. 1, ¶23.) Upon his arrival at the prison, Plaintiff was provided with a wooden cane "through the Defendant UCHC and/or UBHC." (Compl., ECF No. 1, ¶24.) Plaintiff

was assigned to the general population with a cellmate named "Randals." (Compl., ¶¶25-27, ECF No. 1.) Plaintiff was a documented member of the Crips and Randals was documented as affiliated with the Bloods, a rival gang. (Id., ¶¶26-27.)

On August 13, 2016, at approximately 7:00 a.m., Plaintiff was confined to his cell with Randals. (Id., ¶30.) Randals struck Plaintiff with his fist, and as the two fought, Randals knocked Plaintiff unconscious using Plaintiff's cane. (Id., ¶¶31-34.) The assault lasted for fifteen minutes within the cell and then continued in a common area after the cell doors were opened remotely. (Id., ¶¶32-41.) As a result of the assault, Plaintiff underwent facial reconstructive surgery at Cooper University Health in Camden. (Id., ¶¶43-44.) For the entire course of his six-day hospitalization, his hands and feet were shackled, depriving him of sleep and causing physical and mental discomfort. (Id., ¶45.) The corrections officers who supervised Plaintiff during his hospitalization kept Plaintiff in shackles in defiance of Plaintiff's attending physician and nurses. (Id., ¶46.)

In the proposed Amended Complaint, Plaintiff realleges the facts set forth above and adds the following factual allegations. The Intelligence Unit of the New Jersey Department of Corrections ("NJDOC") documents and updates inmates' gang affiliations, and, as a result, all defendants had access to and person knowledge of gang affiliations in the NJDOC system. (Proposed Am. Compl., ¶26,

ECF No. 26-2.) The Intelligence Unit is a subdivision of the NJDOC's Office of Legal and Regulatory Affairs, and reports to Defendant Lanigan. (Proposed Amended Complaint, ¶27, ECF No. 26-2.) The Intelligence Unit's gang database is used for threat assessments and cell assignments for the purpose of ensuring the safety of inmates and employees of the NJDOC. (Id., ¶28.)

In the years leading up to the incident alleged in the proposed Amended Complaint, various investigations, including those by the State of New Jersey, have uncovered pervasive and entrenched gang violence and control within prisons overseen by the NJDOC. (Id., ¶29.) These investigations have uncovered a significant number of prison guards who are gang members, affiliated with gangs or are coerced or blackmailed into doing the bidding of gang members. (Id., ¶30.) It is a goal of the NJDOC to rehabilitate gang members so they can be returned to the general prison population, which keeps the costs associated with separating rival gang members down. (Id., ¶31.)

The database revealed that Plaintiff was a member of the Crips. (Id., ¶33.) The database also revealed that Randals, who was assigned to share a cell with Plaintiff, was a member of the Bloods. (Id., ¶¶35, 36.) Defendants knew the Crips and Bloods are rival gang members housed in close proximity. (Id., ¶37.) Defendants knew it was a common practice for gang members to

further their status by fighting rival gang members in prison. (Proposed Am. Compl., ¶42, ECF No. 26-2.)

Plaintiff alleges the fact that the defendant corrections officers failed to intervene in Randals' attack on Plaintiff for approximately twenty minutes is evidence that they were complicit in the attack or deliberately indifferent to Plaintiff's safety or negligently trained in providing for Plaintiff's safety, including obtaining immediate medical care for his injuries. (Id., ¶53.) If the defendant corrections officers were acting according to NJDOC policy by not intervening earlier, the policies and procedures were deliberately indifferent to Plaintiff's health and welfare. (Id., ¶54.) While hospitalized for his injuries, Plaintiff posed no threat to anyone, and there was no penological justification for keeping Plaintiff in shackles when more humane restraints were available, given Plaintiff's pain and discomfort. (Id., ¶60.)

Plaintiff added a negligence against Defendant Lanigan in Count IX of the proposed Amended Complaint. Plaintiff alleges Lanigan failed to create policies or created deficient policies to protect inmates in the care of the NJDOC. (Id., Count IX.) As a result of deficient policies, Plaintiff alleges he was beaten by another inmate without intervention by corrections officers, and that he received delayed medical care and cruel and unusual punishment when he was kept shackled while hospitalized. (Id.)

Plaintiff makes the following allegation against Defendants UCHC and UBHC in the proposed Amended Complaint:

> Defendant UCHC and/or UBHC and/or Defendant Healthcare Providers also acted with deliberate indifference and/or negligence with respect to the substantial risk of harm in their not insisting on either a segregated or infirmary cell for Plaintiff, or for that matter, any precautions whatsoever in giving Plaintiff the wooden cane.

(Proposed Am. Compl., ¶40, ECF No. 26-2.)

In addition to his NJCRA and § 1983 claims, Plaintiff also added a negligence claim against Defendants UCHC, UBHC and the unidentified Healthcare Providers. (Id.) Plaintiff alleges UCHC and UBHC breached their duties to provide medical care by failing to request that Plaintiff be segregated from the general population while possessing a cane; and consenting to the defendant corrections officers' demands to not remove his shackles during medical treatment. (Id., ¶130.)

## II. STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 15(a)(2), courts should freely give leave to amend when justice so requires. Liberal amendment is appropriate because policy favors resolving cases on the merits. Mullin v. Balicki, 875 F.3d 140, 149 (3d Cir. 2017). Leave to amend may properly be denied based on "undue delay, bad faith or dilatory motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed;

prejudice to the opposing party; and futility." Mullin, 875 F.3d at 149 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). "Futility" means the amended complaint would fail to state a claim upon which relief may be granted under the same standard applied under Federal Rule Civil Procedure 12(b)(6). In re Burlington Coat Factory Securities Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its fact.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell v. Twombly, 550 U.S. 544, 570 (2007)).

III. DISCUSSION

    A. Defendant Lanigan

        1. Section 1983 and NJCRA Claims

The NJCRA is generally interpreted analogously to § 1983. Shabazz v. New Brunswick Police Dep't, Civ. Action No. 13–1975 (FSH), 2014 WL 2931602, at *9 (D.N.J. June 27, 2014). "Where a party fails to identify 'any specific right or theory of liability grounded in the New Jersey Civil Rights Act or New Jersey Constitution that is different from [the plaintiff's] claims under § 1983,' courts will review claims pled under the NJCRA consistent with its analysis of the same issues under § 1983." Id. Therefore, the Court will address the § 1983 and NJCRA claims together, guided by § 1983 jurisprudence.

a.  Due Process Claim

Plaintiff alleges Lanigan violated his right to Due Process, but Lanigan argues that the Due Process claim fails because Plaintiff does not allege that he was a pretrial detainee at the time of the alleged constitutional violations. Therefore, Lanigan contends that Plaintiff failed to state a Due Process claim.

As this Court stated in its Opinion granting Lanigan's motion to dismiss the original complaint (Opinion, ECF No. 24), "the 'more-specific-provision-rule' … holds that 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Wharton v. Danberg, 854 F.3d 234, 246 (3d Cir. 2017) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7, (1997)). The detention of sentenced inmates is governed by the Eighth Amendment, and the detention of pretrial detainees is governed by the Due Process Clause of the Fourteenth Amendment. Wharton, 854 F.3d at 247 (citing Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979)).

The constitutional violations alleged by Plaintiff arose out of his confinement in Bayside State Prison. State prisons generally house only inmates sentenced to prison terms of one year or longer. See N.J.S.A. § 2C:43-10. In the absence of an allegation that Plaintiff was a pretrial detainee at any relevant time in the

proposed Amended Complaint, inclusion of a Due Process claim in the Amended Complaint is futile. Thus, the Court will address whether the proposed Amended Complaint sets forth an Eighth Amendment failure to protect or conditions of confinement claim.

                b.    <u>Eighth Amendment Failure to Protect Claim</u>

Defendant Lanigan contends that the proposed Amended Complaint fails to state an Eighth Amendment failure to protect claim against him by alleging that the NJDOC tracks and reports inmates' gang affiliations; and that Lanigan therefore had knowledge of and acquiesced in Plaintiff's cell assignment with a rival gang member. Plaintiff does not allege Lanigan was involved in selecting Plaintiff's housing or that he had contemporaneous knowledge of and acquiesced in Plaintiff's cell assignment with a rival gang member.

Even if Plaintiff had alleged that Lanigan had contemporaneous knowledge of and acquiesced in Plaintiff's cell assignment, Lanigan cites to <u>Blanchard v. Gallick</u>, 448 F. App'x 173, 177 (3d Cir. 2011), where the court dismissed a failure to protect claim by a prisoner who had previously been assaulted by a Crips member and was subsequently housed with a Crips member. The Third Circuit held that the plaintiff failed to establish a serious threat to his safety. <u>Blanchard</u>, 448 F. App'x at 177. Further, Lanigan argues that the proposed Amended Complaint does not identify any specific policy or practice or lack of a specific

policy or practice that created a substantial risk of harm to his safety by housing him with a Crips member.

The Court finds it does not follow that because the NJDOC has a system to track inmates' gang affiliations that Lanigan was aware of Plaintiff's and Randals' rival gang memberships. It is not reasonable to infer that the Commissioner of the NJDOC is aware of all of the information in the database of inmates' gang affiliations. Therefore, Plaintiff has not pled a supervisory liability claim based on Lanigan's knowledge and acquiescence in a constitutional violation by housing him with a rival gang member.

Although Plaintiff has not alleged that Lanigan created a specific policy or practice that caused his cell assignment with a rival gang member, one could infer from the proposed Amended Complaint that Plaintiff claims the failure to create a policy prohibiting rival gang members from sharing a cell constitutes failure to protect in violation of the Eighth Amendment. The Court finds no precedent for such a claim. In fact, there are similar cases holding to the contrary. See Blanchard, 448 F. App'x at 177 (failure to heed inmate's request not to be assigned to share a cell with members of certain gangs did not establish deliberate indifference to inmate's safety); Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1161 (9th Cir. 2013) (dismissal for failure to show defendants' awareness of a substantial risk of housing certain rival gang members).

Therefore, even if Plaintiff could allege facts that showed the failure to institute such a policy constituted deliberate indifference to a substantial risk of harm to Plaintiff's safety, in the absence of clearly established law, Lanigan would be entitled to qualified immunity. See Pearson v. Callahan, 555 U.S. 223, 231 (2009) ("[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'") (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Plaintiff also seeks to hold Lanigan liable for the twenty minute delay from when he was attacked by Randals and when corrections officers arrived to assist him. Plaintiff has not alleged Lanigan's knowledge and acquiescence in the delay nor has he alleged a specific policy or practice that caused the delay. Moreover, he has not alleged facts establishing deliberate indifference to his safety by delaying his aid.

### c. Conditions of Confinement Claim

Plaintiff alleges that Lanigan subjected him to cruel and unusual punishment under the Eighth Amendment by keeping him shackled while hospitalized at Cooper University Hospital. Lanigan argues that Plaintiff has not alleged his knowledge and acquiescence in the conditions under which Plaintiff received medical treatment. Further, Lanigan contends that being shackled

during facial surgery did not pose a substantial risk to Plaintiff's health or safety.

Indeed, Plaintiff has not alleged facts establishing Lanigan's knowledge and acquiescence in keeping him shackled while receiving treatment in Cooper University Hospital. One could reasonably infer that Plaintiff's Eighth Amendment claim is based on Lanigan's creation of a policy or practice of shackling inmates while hospitalized. Plaintiff does not allege that maintaining the shackles deprived him of necessary medical care but rather that it was unnecessary because he did not pose a threaat and the shackles caused him pain. See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (Eighth Amendment requires prison officials to provide inmates with adequate medical care).

Plaintiff's claim may be better understood as an excessive force claim. A general policy requiring the use of shackles when a prisoner is taken outside a prison for medical treatment does not in itself establish that prison officials unnecessarily and wantonly inflicted pain on a prisoner. See Austin v. Tennis, 381 F. App'x 128, 133 (3d Cir. 2010) (finding cell extraction and use of shackles on inmate who was on a hunger strike was not excessive force in violation of Eighth Amendment). To determine whether force was excessive depends on analysis of several factors, including: (1) need for application of force; (2) relationship between the need for force and amount of force used; (3) extent of injury

inflicted; (4) extent of threat to safety; and (4) efforts made to temper severity of forceful response. Id. Plaintiff has not alleged that Lanigan had contemporaneous knowledge of and acquiesced in the particular circumstances under which Plaintiff was shackled while receiving medical treatment at Cooper University Hospital nor has Plaintiff alleged Lanigan created a policy that there were no circumstances under which a prisoner could receive outside medical care without being shackled. Therefore, the proposed Amended Complaint fails to state an Eighth Amendment conditions of confinement or excessive force claim against Lanigan.

    2.   <u>Negligence Claims</u>

Lanigan claims that (1) Plaintiff fails to allege that he met the presentation requirements of the New Jersey Tort Claims Act; (2) Lanigan is immune to the negligence claims; and (3) the negligence claims are barred by the statute of limitations. First, Lanigan asserts that failure to file a notice of claim under the New Jersey Tort Claims Act ("TCA") is a ground for dismissal at the motion to dismiss stage.

Second, Lanigan argues that he is immune to Plaintiff's tort claims pursuant to N.J.S.A. 59:5-2 because a public employee is not liable for injuries caused by one prisoner to another prisoner. Further, he contends that he is immune from negligence claims for injuries resulting from his exercise of discretionary judgment, pursuant to N.J.S.A. 59:3-2(a). Lanigan acknowledges that courts

have limited discretionary immunity to the discretion exercised at the highest levels of government in matters of policy or planning but contends that the negligence claims against him fall within this limitation. See Tice v. Cramer, 133 N.J. 347, 366 (N.J. 1993) (citing Costa v. Josey, 83 N.J. 49, 54, (N.J. 1980).

Finally, Lanigan argues that amendment is futile because the claims are barred by the two-year statute of limitations. Lanigan contends that the limitations period was not tolled after Plaintiff failed to amend his complaint within the thirty-day period provided by the Court.

          a.    Presentation Requirements of NJTCA

Pursuant to N.J.S.A. 59:8-8., a person bringing a tort claim against a public official must give notice to the entity within ninety days of the injury. A claimant is "forever barred from recovering against a public entity or public employee" if the claimant fails to file the notice of claim with the public entity within 90 days of accrual of the claim and fails to obtain permission of a judge to file a late notice within one year; or if two years have elapsed since accrual of the claim. N.J.S.A. 59:8-8(a). Because a claimant may be forever barred from filing suit under the Act, failure to file a notice of claim is a ground for dismissal at the motion to dismiss stage.

Here, the alleged constitutional injuries occurred in August 2016. The proposed Amended Complaint does not contain allegations

of Plaintiff having met the presentation requirements of the TCA. On the face of the proposed Amended Complaint, the time in which Plaintiff was required to present his notice under the TCA has expired. Because failure to file a notice of claim is a ground for dismissal at the motion to dismiss stage, the Court finds the negligence claims against Lanigan in the proposed Amended Complaint fail to state a claim. See e.g. Niblack v. SCO Malbreen, No. 15-5298, 2016 WL 1628881, at *3 (D.N.J. Apr. 25, 2016) (dismissing TCA claims for failure to allege the plaintiff met the notice of claim requirements).

Even if Plaintiff had pled that he met the presentation requirements of the TCA, Lanigan is immune under N.J.S.A. 59:5-2(b)(4) for an injury caused by one prisoner to another prisoner. Lanigan may also be entitled to discretionary immunity under N.J.S.A. 59:3-2(a), if he can show that he consciously exercised discretion in making policies alleged to have caused Plaintiff's injuries, i.e. permitting rival gang members to be assigned to the same cell and shackling prisoners while they are hospitalized for medical treatment. See Costa v. Josey, 415 A.2d 337, 342 (1980); Waldorf v. Shuta, 896 F.2d 723, 729 (3d Cir. 1990).

B. Defendants UCHC and UBHC

Defendants UCHC and UBHC argue, correctly, that the proposed Amended Complaint does not allege any material new facts in support of Plaintiff's § 1983 and NJCRA claims against them. Therefore, as

the Court granted UCHC and UBHC's motion to dismiss the complaint for failure to state a claim, Plaintiff fails to state a § 1983 or NJCRA claim against UCHC or UBHC in the proposed Amended Complaint.

Plaintiff has included new negligence claims against Defendants UCHC and UBHC in the proposed Amended Complaint. Plaintiff, however, has failed to allege that Defendants UCHC and UBHC, as contracted healthcare providers for the prison, have a duty to make prison housing assignments for the purpose of protecting prisoners' safety from other prisoners.

Plaintiff also seeks to hold UCHC and UBHC liable for negligently allowing Plaintiff to be shackled during his hospitalization at Cooper University Hospital. Plaintiff has not alleged that UCHC or UBHC had any involvement in Plaintiff's medical care at Cooper University Hospital. For these reasons, the Court denies Plaintiff's motion to amend the complaint as to Defendants UCHC and UBHC.

IV. CONCLUSION

For the reasons set forth above, the Court will deny Plaintiff's motion to reinstate and amend the complaint. The Court notes that it did not dismiss this action when it granted Defendants Lanigan and UCHC and UBHC's motions to dismiss, because Plaintiff also sued unidentified John and Jane Doe Defendants, who remain unidentified and unserved.

Federal Rule of Civil Procedure 4(m) provides, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." See Manuel v. Atkins, 545 F. App'x 91, 95 (3d Cir. 2013) (("the District Court properly dismissed all claims against John Doe, as [the plaintiff] failed to [timely] serve John Doe....") Thus, the Court will order Plaintiff to show cause why the Court should not dismiss the claims against all John and Jane Doe Defendants for failure to identify and serve those defendants, and why dismissal should not be with prejudice, pursuant to Federal Rule of Civil Procedure 41(b), for failure to prosecute.

Finally, if Plaintiff seeks to amend the complaint again, he should address the statute of limitations issue, as more than two years have passed since his alleged injury. See N.J.S.A. 2A:14-2(a).

An appropriate order follows.

Date: February 21, 2020

                                         s/Renée Marie Bumb
                                         **RENÉE MARIE BUMB**
                                         **United States District Judge**